**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JUAN ESCALANTE-MELGAR, *et al.*,<br><br>Defendants. | Criminal Action No.: 16-453 (CCC)<br><br>**OPINION** |

Defendants Juan Escalante-Melgar ("Escalante-Melgar"), Elmer Cruz-Diaz ("Cruz-Diaz"), and Oscar Sanchez-Aguilar ("Sanchez-Aguilar") (collectively "Defendants") filed motions *in limine* to exclude video footage showing the murder of Victim-3, photographs of the crime scene, autopsy photographs, and still photographs from surveillance camera footage. ECF Nos. 101, 106, and 107. The Government opposed Defendants' motions. ECF No. 111. The Court heard oral argument on the motions on February 11, 2020 (ECF No. 120 at 79–93), February 19, 2020 (ECF No. 131 at 108–113), March 5, 2020 (ECF No. 147), March 6, 2020 (ECF No. 148), and October 14, 2021 (ECF No. 175).

Defendants object to the introduction of surveillance camera footage from two videos (Nos. 400.5 and 400.7), three crime scene photographs (Nos. 200.2, 200.6, and 200.13), two autopsy photographs (Nos. 201.7 and 201.16R), and three still photographs from the surveillance camera footage (Nos. 237.1, 237.2, 237.3). Defendants argue that these videos and photographs must be excluded under Federal Rule of Evidence 403 because the risk of unfair prejudice substantially outweighs their asserted probative value. ECF Nos. 106, 107, 175. The Government contends that this evidence is highly probative and not unduly prejudicial.

1

Defendants, however, do not object to the introduction of other photographs depicting the crime scene (Nos. 200.1, 200.19, 200.20, 200.27, 200.28, 200.41, and 200.42) and Victim-3's autopsy (Nos. 201.8, and 201.9). The Court has reviewed the entirety of the evidence—both objected to and not challenged—and bases its analysis on its review of the record and pursuant to a balancing test under Rule 403.

## I. The Videos and Photographs at Issue

The Government seeks to introduce two videos. The first video is from a camera looking out from Victim-3's residence which shows Victim-3 approaching the door of his building and unlocking it before a man runs up the steps of his building and shoots him out of the frame of the camera ("Camera 5 Video"). The second video is from a camera facing inwards towards Victim-3's residence which shows the same events as the Camera 5 Video, but also explicitly includes the gun shot and Victim-3's death ("Camera 6 Video").

The Government also seeks to introduce three crime scene photographs of Victim-3's murder, which depict the deceased, Victim-3, at the crime scene from the front (No. 200.13), the back (No. 200.6), and draped under a white sheet (No. 200.2). The Government further seeks to introduce two autopsy photographs, which show an image of where the bullet entered Victim-3's neck (No. 201.7) as well as an image of the bullet that had lodged in Victim-3's internal tissue (No. 201.16R). In addition, the Government intends to introduce three still photographs from the surveillance camera footage, which show the shooter (No. 237.1), a street view with an individual (No. 237.2), and an image of the shooter's arm, the firearm at issue, and Victim-3 in the frame (No. 237.3). ECF No. 175.

The parties' positions have evolved concerning the videos and photographs. ECF Nos. 101, 106, 107, 120, 175. The Government initially sought to include the full versions of the Camera 5

Video and the Camera 6 Video and all of the photographs detailed above. After discussions with both the undersigned and Defendants' counsel, the Government subsequently edited the videos and eliminated and redacted certain photographs. At present, however, as to the Camera 6 Video, the Government returns to its original position and seeks to introduce the full version of the footage, noting the lack of agreement with defense counsel as to the admission of the videos and photographs at issue and upon further reflection regarding the applicable case-law (No. 400.7). ECF No. 175.

Regarding the Camera 5 Video (No. 400.5), it was shortened in length to eliminate images of Victim-3's blood. As to the redacted version of the Camera 6 Video (No. 400.6), it omits footage of the moment that Victim-3 is shot and his subsequent collapse to the ground. Further, the Government redacted one of the autopsy photographs that showed the bullet lodged in Victim-3's internal tissue to enlarge and focus on the bullet at issue, removing any extraneous images of Victim-3's internal tissue (No. 201.16R). The Government also eliminated 34 autopsy photographs (ECF No. 147) and one of the crime scene photographs (No. 200.8) that was duplicative of another photograph (No. 200.6).

While Defendants initially objected to all of the photographs that the Government seeks to introduce, they now only object to the inclusion of a limited subset of these photographs as detailed above. Further, while Sanchez-Aguilar first sought "to prohibit only the actual murder itself, a few seconds on each of two cameras," (ECF No. 101-1 at 3), he later joined the position of his co-Defendants during the October 14, 2021 trial proceedings and now objects to the admission of all of the surveillance camera footage (Nos. 400.5, 400.6, and 400.7).

## II. The Parties' Positions

Defendants state that the videos and photographs are graphic and have minimal, if any, probative value as Defendants do not dispute that Victim-3 was killed with a firearm by Juan Garcia-Gomez ("Garcia-Gomez"), who entered a plea of guilty on January 27, 2020 (ECF No. 134). *See* ECF No. 106 at 2. Specifically, Defense counsel previously stated that they "don't think there will be anybody at th[e] [Defense] table that is going to suggest that Mr. Garcia was not the person [who murdered Victim-3]." ECF No. 120 at 82. Despite such discussion, the Court notes that the parties did not reach a stipulation regarding these facts.

Nevertheless, Defendants contend that the Government has several other ways to prove that Garcia-Gomez killed Victim-3 with a firearm, including statements made to the police, wiretap recordings, and witness testimony. ECF No. 107 at 2–3; ECF 101-1 at 8. Relying heavily on *United States v. Bailey*, 840 F.3d 99 (3d Cir. 2016), Defendants argue that this alternative and less prejudicial evidence tending to prove that Garcia-Gomez killed Victim-3 with a firearm requires the Court to exclude the surveillance camera footage and photographs from being admitted at trial.

The Government argues that the surveillance camera footage and the photographs are admissible because they are highly probative with respect to the charges against Defendants, specifically murder, and conspiracy to commit murder, in aid of racketeering. ECF No. 46 at 26, 208; ECF No. 111 at 4. The Government contends that the surveillance camera footage and the photographs will be immensely important to identify Victim-3 and Garcia-Gomez and corroborate the events described by witnesses appearing in court. ECF No. 111 at 4. Further, the Government asserts that this evidence will help facilitate the jury's understanding of the medical and ballistics' experts' testimony. *Id.* The Government points out that it must prove its case beyond a reasonable doubt, and that it must be allowed to marshal all supporting relevant evidence, even if the evidence

may be difficult to view. *Id.* at 3. Additionally, the Government avers that it has endeavored to lessen any potential prejudice from the surveillance video footage and the photographs by reducing the length of the Camera 5 Video (No. 400.5), redacting one of the autopsy photographs (No. 201.16R), and in seeking the admission of less than half of the photographs that it initially intended to introduce. ECF Nos. 140, 175. Finally, the Government contends that *Bailey* and the other cases that Defendants rely on are easily distinguishable from this matter. ECF No. 111 at 3; ECF No.175.

### III. Analysis

Federal Rule of Evidence 401 states that evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." A court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. In the criminal context, unfair prejudice "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). Rule 403 generally favors the admission of relevant evidence and exclusion of relevant evidence is rarely required. *See United States v. Universal Rehabilitation Services (PA), Inc.*, 205 F.3d 657, 664 (3d Cir. 2000) ("A number of courts have held that Federal Rule 403 creates a presumption of admissibility, and that district courts may utilize the rule only rarely to cause the exclusion of evidence.").

The Court has reviewed all of the videos and photographs and bases its decision regarding admissibility on its own observations and after conducting a balancing test pursuant to Rule 403. *See United States v. Cunningham*, 694 F.3d 372, 383–84 (3d Cir. 2012). As discussed below, the

5

Court will permit the Government to introduce the Camera 5 Video, in its shortened form (No. 400.5). With respect to the Camera 6 Video, the Court will permit the Government to introduce its previously proffered version that stops the video immediately before the gun is fired, such that the actual murder is omitted (No. 400.6). Thus, the Court will exclude the full version of the Camera 6 Video (No. 400.7) to avoid exposing the jury from viewing the moment Victim-3 was murdered. As to the photographs, the Court will permit the Government to introduce the three crime scene photographs (Nos. 200.2, 200.6, and 200.13), the two autopsy photographs (Nos. 201.7 and 201.16R), and the three still photographs (Nos. 237.1, 237.2, 237.3).

The Court finds that the surveillance camera footage is highly relevant and probative as it shows the incident at issue. Specifically, the Camera 5 Video looks outward from Victim-3's building facing the side-walk. It shows Victim-3 at his front door and concludes with the shooter running up behind Victim-3, firing his weapon, and fleeing the scene—while Victim-3 exits the frame prior to the discharge of the weapon. The Camera 6 Video is filmed facing Victim-3's building and his front door. It shows Victim-3 approaching his door and attempting to enter his building. As redacted, with Victim-3 attempting to enter his building, it shows the shooter's arm raised and pointing a gun at Victim-3 with the rest of the shooter's body outside of the frame. It stops right before the shooter pulls the trigger and it excludes Victim-3 then falling to the ground.

The Camera 5 and 6 Videos show the shooter, the victim, the firearm, the time and location of the shooting, and the direction from which the shooter came and fled. Accordingly, they are highly relevant and probative as to Defendants' murder, and conspiracy to commit murder, in aid of racketeering charges. *See United States v. Con-ui*, No. 13-CR-123, 2017 WL 783437, at *2 (M.D. Pa. Mar. 1, 2017) (admitting video "depict[ing] the very events underlying the murder" charged against the defendant where "ascertaining the truth is the jury's most critical function"

and "the truth has been preserved on a recording"). As to the probative nature of the videos, Sanchez-Aguilar even conceded at oral argument that the surveillance camera footage has such value. ECF No. 120 at 80:20–21 ("It has a level of probative value, but it is cumulative to other ways to prove [the murder]."). Moreover, as the Government notes, it bears the high burden of proving beyond a reasonable doubt that Defendants committed the murder of Victim-3, and these videos will enable the jury to be a witness to the crime charged allowing them to "be in a better position to make inferences about [Defendants]." *Con-ui*, 2017 WL 783437, at *2.

Defendants did not stipulate to any of the facts portrayed in the videos and photographs (ECF No. 120 at 82:21–83:3), but, even if they offered any stipulation, the Government would not have been required to accept it. Rather, as the Government correctly pointed out, it is entitled to attempt to meet its high burden of proof regarding Defendants' murder charges through a narrative rather than a series of stipulations. ECF No. 131 at 110:4–7 ("For one, providing the full context of where these people come from, where they're going, we'd be essentially playing a flip book of still images in order to show the full narrative of what occurred."); *see also Old Chief*, 519 U.S. at 654 ("In sum, the accepted rule that the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away rests on good sense."). This is especially true in this case as the Government asserts that it has footage showing the movements of certain Defendants before and after the murder of Victim-3.

However, as the Court will only permit the Government to introduce the redacted version of the Camera 6 Video due to the highly disturbing nature of viewing the occurrence of someone's murder, the surveillance footage at issue does not depict the moment Victim-3 was murdered. As such, the three challenged crime scene photographs (Nos. 200.2, 200.6, 200.13) depicting Victim-3 following his murder—which, by nature of their form, are less inflammatory—will confirm for

the jury that Victim-3 was murdered, a critical point to the Government's case. Specifically, they show angles of Victim-3 collapsed on the ground from the front (No. 200.13), from the back (No. 200.6), as well as an image of Victim-3 covered by a white sheet in front of the building (No. 200.2). *United States v. Treas-Wilson*, 3 F.3d 1406 (10th Cir. 1993) (finding that the district court did not abuse its discretion in admitting crime scene photographs in first-degree murder prosecution which graphically depicted nature of fatal wound as the photographs depicted that the murder occurred). Further, these photographs provide important context and background for the murder of Victim-3, may help the jury understand the timeline of the murder and piece together Defendants' alleged connections to the events in question, and corroborate the testimony of fact witnesses whose credibility may be challenged regarding what occurred on the night of the incident. *See* ECF No. 111 at 4 ("Crime scene photographs are expected to corroborate the testimony not only of law enforcement witnesses who processed the crime scene but also the cooperating witnesses' accounts of how the murder occurred."); *see also* ECF No. 120 at 89:5–8 ("We are representing to the Court that the characteristics of this firearm will be relevant for purposes of corroboration and certainly proving the murder as to each of these Defendants.").

The Court similarly finds the two challenged autopsy photographs, which depict where the bullet entered Victim-3's neck (No. 201.7) and the bullet found in Victim-3's internal tissue (No. 201.16R), as redacted, to be highly relevant and probative, as they are needed to "facilitate the jury's understanding" of the technical testimony to be offered by the Government's medical examiner and ballistics expert at trial regarding details of how the murder occurred. *See, e.g., United States v. Benally*, 656 F. App'x 858, 859 (9th Cir. 2016) (holding that the district court's admission of autopsy photographs of a victim's wounds was proper because "a visual depiction may be easier to grasp than medical testimony").

Finally, the Court finds the challenged still photographs from the surveillance footage (Nos. 237.1, 237.2, 237.3) are highly relevant and probative as they will permit the jury to identify the shooter of Victim-3, the firearm that was used in furtherance of the murder, and other contextual information. *See Sevey v. Knowles*, No. 00-4365, 2003 WL 1872965, at *12 (N.D. Cal. Apr. 8, 2003) (admitting photographs taken of the defendant hours after the charged murder took place as the photographs were relevant on the issue of identifying defendant's unique body marks). In sum, the evidence discussed above is highly probative as to proving the Government's case and, therefore, can only be excluded if that probative value is substantially outweighed by the risk of unfair prejudice. *See United States v. Fields*, 483 F.3d 313, 355 (5th Cir. 2007).

Turning to the risk of any asserted prejudice concerning these videos and photographs, it does not substantially outweigh the probative value discussed above. As for the Camera 5 Video (both versions) and the redacted version of the Camera 6 Video, they do not actually show Victim-3 being shot. In the Camera 5 Video (No. 400.5), Victim-3 is out of the camera frame when the gun is fired, and the redacted version of the Camera 6 Video (No. 400.7) is cut before the trigger is pulled. The footage also has no sound, is black and white, the actual murder of Victim-3 is not visible in either video, blood is not visible in either video, and Victim-3 is not shown in pain or anguish at any point in either video. The same can be said for the three challenged still photographs from the surveillance footage (Nos. 237.1, 237.2, 237.3). While the three challenged crime scene photographs (Nos. 200.2, 200.6, 200.13) and the two challenged autopsy photographs (Nos. 201.7 and 201.16R) depict Victim-3 subsequent to the murder, other courts have admitted far more graphic content where, as here, the content was highly relevant to the charges at issue. *See, e.g., Con-Ui*, 2017 WL 783437, at *2–3 (admitting video of assault on corrections officer in murder case "as he is kicked down a flight of stairs, his efforts to escape, the infliction of over 200 stab

wounds, kicks to the head, and other acts of violence"); *see also United States v. Lujan*, 603 F.3d 850, 858 (10th Cir. 2010) ("[T]he vicious, brutal nature of a defendant's conduct is not itself sufficient to justify a complete exclusion of evidence tending to show the defendant engaged in those acts."); *United States v. Velasquez*, 246 F.3d 204, 211 (2d Cir. 2001) (affirming decision to admit gory autopsy photographs despite defendant's stipulation offer); *United States v. Salameh*, 152 F.3d 88, 122–23 (2d Cir. 1998) (affirming decision to admit "graphic" and "disturbing" photographs of bombing victims, including corpse of a pregnant woman, despite defendants' stipulation offer).

Accordingly, pursuant to the Court's analysis under the Rule 403 balancing test, permitting the Camera 6 Video, as redacted, in addition to the other video and photographs, will meet the various interests of the parties, as the Government may prove its case through the videos as well as through additional photographic evidence, and the jury is precluded from watching overly inflammatory content. The Court notes that each of these admissible videos and photographs provide critical and independent probative value as to the Government's case, while guarding against what may be considered, in these circumstances, the most prejudicial aspects of the evidence from being shown to the jury.

Ultimately, Defendants are charged with the murder depicted in these videos and photographs, and they may not "benefit from a Rule 403 exclusion for unfair prejudice simply because their conduct was of a grisly nature." *See Lujan*, 603 F.3d at 858. To the extent that Defendants argue that this evidence is cumulative, their contentions are unavailing because, as discussed above, each piece of evidence plays a critical role in explaining to the jury exactly what happened on the night of Victim-3's murder. *See United States v. Patrick*, 513 F. App'x 882, 889

(11th Cir. 2013) ("Rule 403 does not preclude the admission of relevant evidence simply because other evidence addresses the same issues.").

Finally, the Court finds that *Bailey* is distinguishable due to key factual and legal differences between that case and this matter. Unlike the video in *Bailey*, here the surveillance video footage and photographs have been discussed and weighed under Rule 403 on the record. *See Bailey*, 840 F.3d at 120 (finding procedural error where court "failed to conduct the requisite Rule 403 on-the-record balancing [of video]"). Further, the defendants in *Bailey* faced only drug and firearms-related charges (*id.* at 105) (they did not face homicide charges), while Defendants here are charged with the murder depicted in the surveillance camera footage and shown in the photographs. Moreover, the government in *Bailey* asserted that a purpose of admitting the murder video was to show the "brazen" manner in which the murder was committed. *Id.* at 123–24. Here, however, the Government moves to introduce the camera footage and photographs explicitly for the purpose of providing information necessary to prove the crime in question—murder.[1] *See Con-ui*, 2017 WL 783437, at *1, *3, *4 (permitting video evidence of the defendant violently killing a corrections officer as this evidence was highly probative and the video's lack of sound or visible blood mitigated such concerns of prejudice).

Defendants' reliance (ECF No. 175) on *United States v. Morena*, 547 F.3d 191 (3d Cir. 2008) and *United States v. Welshans*, 892 F. 3d 566 (3d Cir. 2018) is also unavailing. In *Morena*, a firearms possession case, the government sought to elicit testimony from witnesses about the

---

[1] The Court also notes that the video footage in *Bailey* appears to have been more prejudicial than the video footage at issue here given the redacted versions of the Camera 5 Video, which removes images of Victim-3's blood, and the Camera 6 Video, which removes any depiction of Victim-3's death. By contrast, the video in *Bailey* showed both the commission of the murder and also witnesses to the murder (including a child) which had the potential to inflame the jury. 840 F.3d at 121.

11

defendant's drug use, despite being warned by the court numerous times that such drug evidence was overly prejudicial as it was unrelated to the underlying gun possession charge. *Morena*, 547 F.3d at 194–95. In contrast, here, the evidence at issue depicts the crime that Defendants are charged with—murder. As to *Welshans,* a child pornography case, the court found that the government's graphic testimonial descriptions of child pornography to the jury were overly cumulative as the government had previously introduced other evidence of child pornography to the jury, including videos, to prove the crime charged. *Welshans*, 892 F.3d at 576. Here, in distinction, as discussed above, the surveillance footage at issue is not cumulative of the other evidence that the Government intends to introduce, as each piece of evidence portrays a particular component of the murder, which taken together, illustrates for the jury how Victim-3 was killed. The Court also notes that, because the Government is only permitted to introduce the redacted version of the Camera 6 Video (No. 400.6), the jury will be precluded from viewing the most graphic portion of the evidence: the actual killing of Victim-3.

## IV. Conclusion

For all the reasons stated above, the Court will deny Defendants' motions, but the Court will only permit the Government to introduce the redacted version of the Camera 6 Video (No. 400.6) and will exclude the full version of the Camera 6 Video (No. 400.7). ECF Nos. 101, 106, and 107; *see also* ECF No. 175. Additionally, the Court allows the Government to introduce the Camera 5 Video, with the proffered redaction (No. 400.5), the three crime scene photographs (Nos. 200.2, 200.6, and 200.13), the two autopsy photographs (Nos. 201.7 and 201.16R (as redacted)), and the three still photographs (Nos. 237.1, 237.2, 237.3). The photographs not challenged may

also be admitted. An appropriate Order accompanies this Opinion.

**DATED:** October 18, 2021

                                                    **CLAIRE C. CECCHI, U.S.D.J.**

13